THE PEOPLE *ex rel.* John G. Ruel, Petitioner, *vs.* I. L. WEAVER, Judge, *et al.* Respondents.

*Opinion filed June 23, 1928.*

1. SPECIAL ASSESSMENTS—*what is a final judgment within the meaning of section 32 of Local Improvement act.* The term "final judgment," as used in section 32 of the Local Improvement act, means the judgment entered after all the issues between the petitioner and the defendants have been decided, and it has the same meaning as it has in section 26 of the act.

2. SAME—*a final judgment of confirmation cannot be vacated after term without statutory authority.* The court, after the expiration of the term at which a final judgment of confirmation has been entered, cannot vacate said judgment unless it be given authority to make such order by some provision of the statute.

3. SAME—*consent to judgment of confirmation is not an election to accept judgment within meaning of section 32 of Local Improvement act.* The act of the petitioner in moving for a judgment of confirmation, which includes an assessment against it for public benefits, does not constitute an election to accept the judgment, within the meaning of section 32 of the Local Improvement act, so as to preclude it from afterward dismissing the proceeding under said section, as the statute contemplates a decision of the court on all issues before there is a final judgment, on which an election is demanded, and the right of election does not arise until after such final judgment.

4. SAME—*what does not constitute an election to dismiss under section 32—mandamus.* A so-called election by the petitioner to reject the findings of the court as to assessments and awards and a petition to vacate the judgment of confirmation do not constitute an election to dismiss the proceeding within the meaning of section 32 of the Local Improvement act, and an order vacating the judgment in accordance with such action is without authority of statute and on petition for *mandamus* the court may be compelled to expunge the order.

5. SAME—*whether attorneys for city were authorized to move for judgment of confirmation cannot be determined in a collateral proceeding.* Whether attorneys for the city were authorized by the city council to move for judgment of confirmation, which includes an assessment for public benefits, cannot be determined in a proceeding for a writ of *mandamus* to compel the court to expunge

an alleged void order vacating the judgment of confirmation, as the court entering the judgment of confirmation had jurisdiction to act concerning the subject matter, and its judgment cannot be collaterally attacked no matter how erroneous it may be.

6. MANDAMUS—*court may be compelled to expunge void order.* *Mandamus* is the proper remedy to compel the court to expunge a void order vacating a judgment.

ORIGINAL petition for *mandamus.*

McKINNEY, LYNDE & GREAR, (HAYES McKINNEY, of counsel,) for petitioner.

WERNER W. SCHROEDER, for respondent I. L. Weaver; SAMUEL A. ETTELSON, and GOTTHARD A. DAHLBERG, (JOSEPH J. THOMPSON, of counsel,) for respondent the city of Chicago.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is an original proceeding in *mandamus* brought on the relation of John G. Ruel, a property owner and taxpayer, against I. L. Weaver, acting judge of the county court of Cook county, and the city of Chicago, a municipal corporation, to compel Judge Weaver to expunge an order in a proceeding under the Local Improvement act entered November 17, 1927, which vacated a judgment of confirmation entered July 15, 1927.

It appears from the petition that on February 5, 1924, the city of Chicago filed in the county court its petition for opening and widening East Seventy-fourth street, in said city, from Stony Island avenue to Bennett avenue, and for spreading a special assessment to pay for the cost of such opening and widening. Among the lands affected was a tract belonging to relator. Commissioners were appointed to fix the amount of compensation to be awarded relator and other property owners and to spread a special assessment to pay for the cost of opening and widening the street,

The commissioners filed their report and assessment roll on August 7, 1925, and relator was summoned, appeared and filed legal objections, which were heard and overruled. July 15, 1927, at the July term of the county court, a judgment was entered awarding relator $63,487.51 as compensation for that portion of his land which was taken and assessing against the remainder of his lot for benefits accruing to it the sum of $16,891.20. Awards were made to and assessments were made against various other owners whose lands were affected, and the city of Chicago was authorized to take possession of the condemned lands upon payment or deposit with the county treasurer of the amounts due the respective owners. The court found that the total amount of awards made for property taken or damaged exceeded the amount assessed for benefits against the other property and that the deficiency in the amount of the assessments necessary to pay such awards was $67,381.28, and proceeded as follows: "And the court, being fully advised in the premises, *on motion of the petitioner by its attorneys,* orders that said deficiency, being the sum of $67,381.28, be assessed against the city of Chicago as public benefits, and judgment is accordingly given for the said sum." The court having disposed of all the awards and assessments, including the assessment against the city of Chicago for public benefits, concluded as follows: "And the court doth further order and adjudge that the assessment roll heretofore returned and filed by the commissioners and as modified by the verdict of the jury or by orders of the court entered herein for benefits by reason of the proposed improvement herein involved, and also said assessment against said city of Chicago for public benefits, be and the same are hereby in all respects confirmed as to said city of Chicago and as to each and all of the lots, pieces and parcels of land described in said commissioners' report for the amounts in said roll contained and as modified by the verdict of the jury and the orders of the court hereinabove

mentioned." Nothing further was done in such proceeding until October 5, 1927, which was one of the judicial days of the September term of the county court. On that day the city of Chicago filed a document which reads: "Now comes the petitioner, city of Chicago, by Samuel A. Ettelson, corporation counsel, and Gotthard A. Dahlberg, attorney for the board of local improvements, and files the election of the petitioner to reject the findings both as to the amount of the assessments and awards as found and determined by the order of court heretofore entered herein and to abandon and discontinue all proceedings to collect the said assessments or to pay the said awards. And the said assessments and awards are hereby rejected." Two days later, but during the September term, the city of Chicago filed a petition, and later, on October 13, 1927, one of the days of the October term, an amended petition in place of the original. This amended petition alleges that upon due proceedings an assessment roll was filed and awards and assessments made; that nothing has been done regarding the collection of said assessments; that no contract has been let; that the making of the improvement has not been commenced and that the same has been abandoned. The petition prayed that the assessment roll be held null and void; that the judgment entered on July 15, 1927, confirming said roll as modified, be vacated and set aside, and that the court appoint new commissioners to make and return a new roll. This amended petition was presented to respondent I. L. Weaver, then sitting judge of the county court but not the judge who had entered the order of July 15. Over the objections of property owners, including relator, Judge Weaver granted the prayer of the petition on November 17, 1927, vacated and set aside the judgment of July 15, 1927, and appointed new commissioners to prepare a new assessment roll. Relator sought to appeal from this judgment but was denied the right. On December 2, 1927, the relator presented to Judge Weaver a mo-

tion to vacate the order of November 17, 1927, which mo-
tion was denied. As hereinbefore stated, the relator prays
for a writ of *mandamus* commanding Judge Weaver to
vacate the order of November 17, 1927. Respondents have
demurred to the petition, and the question is the sufficiency
of the petition to entitle relator to the writ of *mandamus.*

Under section 12 of the Local Improvement act the pro-
ceedings under an ordinance which requires the taking of
property shall be as described in sections 13 to 33, inclusive,
of the act, and shall also be governed by the remaining sec-
tions of the act so far as not in conflict with sections 13
to 33. (Smith's Stat. 1927, p. 479.) Respondents claim
authority for the vacation of the judgment under sections 32
and 56 of the Local Improvement act. Section 32 is ap-
plicable, but section 56 is applicable only in the event it
does not conflict with the provisions of sections 13 to 33
of the act. Section 32 provides: "Upon the return of a
verdict in a proceeding to acquire property for a public im-
provement, if no motion for a new trial be made, or if
made, then if overruled, the petitioner shall within ninety
days after final judgment as to all defendants, both as to
the amount of damages and compensation to be awarded
and benefits to be assessed, elect whether it will dismiss said
proceeding or enter judgment on said verdict. If it shall
elect to enter such judgment, it shall become thereby bound
and liable to pay the amount thereof, whether such assess-
ment be collected or not, and such judgment or condemna-
tion shall not be conditional." (Smith's Stat. 1927, p. 484.)
"Final judgment," as used in section 32, means the same
as it does in section 26 of the act, where it is said: "But
no final judgment shall be entered as to any of the prop-
erty embraced in said roll until all the issues in the case
have been disposed of, including revised or re-cast rolls,
if any." It is the judgment entered after all the issues be-
tween the petitioner and the defendants have been decided.
(*City of Evanston* v. *Knox,* 241 Ill. 460.) On July 15,

1927, when the final order of confirmation was entered in the proceeding, all the issues between all the parties had been determined, including awards for property and assessments for benefits against private property and the city. The judgment was a final judgment under section 32 of the act. The court, after the expiration of the term at which a final judgment of confirmation has been entered, cannot vacate said judgment unless it be given authority to make such order by some provision of the statute. (*People* v. *Noonan,* 238 Ill. 303.) The judgment of July 15, 1927, was a final judgment conditional in nature until the lapse of the ninety-day period granted the city to elect to dismiss the proceeding or to accept the judgment entered. After the lapse of the ninety days, if the city elected to accept the judgment or failed to dismiss the proceeding, the judgment would cease to be conditional and would become final. The statute contemplates a final judgment on all the issues and then makes it conditional until the petitioner acts or fails to act within the ninety-day period. The language of the statute permitting an election to enter judgment does not mean that two judgments should be entered, but must be construed to mean that an election to accept the judgment already entered must be made.

Counsel for relator argue that the city of Chicago, by moving for a judgment against the city for public benefits, elected to accept the judgment and that it could not thereafter retract. The statute contemplates a decision of the court on all issues before there is a final judgment on which an election is demanded. The fact that the city consented to the entry of the judgment, which the statute makes conditional, did not deprive it of its election. Its right of election did not arise until after such final judgment.

Respondent the city of Chicago asserts that the so-called election filed by it within ninety days of the rendition of the judgment was valid and in harmony with the provisions of section 32. The election filed was "to reject the findings

both as to the amount of the assessments and awards as
found and determined by the order of court heretofore en-
tered herein and to abandon and discontinue all proceedings
to collect the said assessments or to pay the said awards."
The statute required the petitioner to elect to dismiss said
proceeding or accept the judgment. The annulment of the
assessment did not end the proceeding. (*Ewart* v. *Village
of Western Springs*, 180 Ill. 318.) The assessment roll is
filed to secure from the court an assessment in the manner
provided by law, but it is not the whole proceeding. The
only way the proceeding can be dismissed is to dismiss the
petition. Respondent the city of Chicago did not comply
with the statute. The election was not an abandonment of
the improvement or a dismissal of the proceeding but an
attempt to abandon a valid assessment after final judgment
and after the term and to substitute another assessment for
the same improvement in the same proceeding. The statute
conferred no such right on the city, and to sanction such a
practice would be to give undue advantage to one of the
parties to the controversy and work an injustice to the citi-
zens and property owners. Inasmuch as there was no mo-
tion to dismiss the proceeding, section 56 furnishes no au-
thority for the order of November 17.

The contention that *mandamus* is not the proper remedy
for relator to invoke is untenable. The order entered was
void and relator is entitled to have it expunged. *People* v.
*Williams*, 330 Ill. 150; *People* v. *Righeimer*, 306 id. 308.

The last ground of demurrer was that the court ren-
dered judgment against the city for public benefits without
the authority of the city council. The public benefits were
confirmed against the city on the motion and at the request
of attorneys for the city. This is not an appeal from a
judgment where the lack of authority on the part of the
attorneys appears from the record. The court had juris-
diction to act concerning the subject matter, and its judg-
ment cannot be collaterally attacked no matter how errone-

ous it may be. In *People* v. *Ford,* 289 Ill. 550, this question was presented on a review of a proceeding for an application for judgment for delinquent taxes. The city in the original proceeding had moved for judgment against itself for public benefits. It was there held that, inasmuch as the court had jurisdiction, the judgment of confirmation could not be attacked for any error in the proceeding on an application for judgment for delinquent taxes. This case is analogous to the case at bar and decisive of the question. Counsel for the city of Chicago cite and rely on the case of *City of Carlinville* v. *Anderson,* 303 Ill. 247. That case was a direct appeal from the judgment of confirmation. It was not a collateral proceeding. The city assigned cross-errors on the judgment ordering the deficiency taxed against the city as public benefits. The record does not show that the attorneys for the city consented to it or that the city council had authorized it. It was error to confirm such a judgment in the absence of some authority therefor. On direct appeal this error was reviewed and the judgment reversed. That case does not conflict with *People* v. *Ford,* *supra.* The two cases present different situations and the law was correctly applied in each instance. There is no merit in the fourth ground of demurrer.

The demurrer is overruled and the writ awarded.

*Writ awarded.*