B. F. Langworthy and Edward J. Stevens, Trading as Langworthy and Stevens, Appellees, v. Village of Oak Lawn et al., Defendants.

Appeal of Village of Oak Lawn and Arthur F. Hilgendorf, Appellants.

Gen. No. 38,851.

Opinion filed June 29, 1936. Rehearing denied July 10, 1936.

W. OTTO WIELGORECKI, of Blue Island, for appellants; WALTER F. BRIODY, of Blue Island, of counsel.

B. F. LANGWORTHY, of Chicago, for appellees.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiffs filed their complaint in chancery against the Village of Oak Lawn and others, for an accounting with the Village of the first instalments of certain special assessments levied by the Village for local improvements, alleging that they held vouchers issued by the Village, payable out of the first instalments; that the vouchers were in payment of services rendered by them as attorneys for the Village in the special assessment proceedings; that collections of the first instalments had been made by the Village but had not been properly paid out by the Village, some of the moneys having been paid by the Village to persons who were entitled to the funds derived from the first instalments only after the vouchers held by plaintiffs had first been paid. Edward A. Briggs, Sr., one of the defendants, who had been an attorney for the Village in certain of the special assessment proceedings, filed a cross complaint claiming that he held certain vouchers payable out of the first instalments, and asked for similar relief. The other defendants, the Village and its treasurer, filed their answers admitting plaintiffs' right to an accounting, but alleging there were other vouchers payable out of the first instalments which were unpaid, and that all of the holders of vouchers were entitled to share *pro rata* in the moneys collected, which were insufficient to pay the vouchers in full.

The case was tried on a stipulation of facts and a decree entered that plaintiffs recover from the Village $2,653.34, and it was ordered that within 10 days the Village treasurer pay plaintiffs $1,274.67, the amount the court found to be then in his hands applicable to the payment of plaintiffs' vouchers, and that upon such payment the judgment be reduced accordingly.

It was further decreed that cross plaintiff Briggs recover from the Village $6,592.49, and the treasurer was

ordered to pay cross plaintiff within ten days $1,136.89, on such judgment, being the amount in the hands of the Village treasurer applicable to the payment of cross plaintiff's vouchers.

The Village and its treasurer appeal; claiming there is no priority of payment of the vouchers, but that the fund should be prorated among the holders of the unpaid vouchers, sufficient funds not having been collected to pay them in full; that section 88 of the Local Improvement Act, "gives priority in the right to receive vouchers to those entitled to payment for costs and expenses, but it does not create priority among the vouchers after they have been issued in payment"; that vouchers issued for the cost of engineering and inspection are a part of the costs of the improvement, over which plaintiffs cannot claim priority.

On the other hand, plaintiffs and cross plaintiff contend that the vouchers which they hold were issued to them for legal services rendered in the special assessment proceedings, are a part of the costs of making and levying the assessment, and under secs. 88 and 94 of the Local Improvement Act should be paid out of the moneys collected from the first instalments before any payment could legally be made for engineering and inspection and before any payment to the contractor for work done.

We think neither of these contentions can be sustained. The mere issuance of the vouchers to the parties entitled to them does not relieve the Village from seeing that the money collected is disbursed first to those who hold vouchers which were issued to evidence the costs of making the improvements.

As to plaintiffs' and cross plaintiff's contention, the pertinent provisions of secs. 88 and 94 of the Local Improvement Act (pars. 218 and 226, chap. 24, Ill. State Bar Stats. 1935) are: (sec. 88): "If such first instalment is not collected when payments fall due, vouchers therefor may be issued, payable out of the first instal-

ment when collected. Such vouchers shall bear interest at a rate not more than six per centum per annum nor less than four per centum per annum, payable annually, . . . *Provided, however,* that in cities, towns and villages having a population of less than five hundred thousand, where the ordinance for the improvement provides for the collection of costs, such costs shall be first paid out of said instalment and may be included in and evidenced by vouchers issued as herein provided." In sec. 94 it is provided, *inter alia,* that the costs and expenses of making and levying a special assessment and of letting contracts, "and also the entire cost and expense attending the making and return of the assessment rolls and the necessary estimates, examinations, advertisements, etc., connected with the proceedings herein provided for, including the court costs, including the fees to commissioners in condemnation proceedings, which are to be taxed as above provided, shall be paid by the city, village or town out of its general fund: *Provided, however,* that in cities, towns and villages of this State having a population of less than five hundred thousand by the last preceding census of the United States, or of this State, the city, village or town, as the case may be, may in and by the ordinance providing for the assessment prescribed, provide that a certain sum, not to exceed six per centum of the amount of such assessment, shall be applied toward the payment of the aforesaid and other costs of making and collecting such assessment.

"The limitation in the foregoing proviso shall not apply to the costs of engineering and inspection connected with any local improvement, but such costs in cities having a population of less than 500,000 as aforesaid, may be included in the cost of the improvement to be defrayed by special assessment."

Counsel for plaintiffs and cross plaintiff say that the last paragraph of sec. 94 quoted, which was passed in 1923 as an amendment to sec. 94, was enacted "for the

express purpose of making cost of engineering and inspection a part of the construction costs as they are usually classified in the building industry''; that prior to this amendment the costs of engineering and inspection were a part of the ''court costs and necessary lawful expenses'' of the special assessment proceeding. We think this contention cannot be sustained.

In *City of Carlinville v. Andersen,* 303 Ill. 247, it was held that the cost of inspecting the work and materials and engineering work must be paid by the city out of the general fund or be included within the six per cent allowed to be levied by certain cities under the proviso of sec. 94 of the Local Improvement Act. This decision was rendered in 1922 and before the enactment of the last paragraph above quoted, of sec. 94. The effect of the amendment of 1923 is that a city or village of less than 500,000 population may provide in the ordinance for a local improvement; that a sum not to exceed six per cent of the amount of the assessment may be applied toward the payment of the costs of making and collecting the assessment and that if this six per cent is insufficient, the ordinance may provide that the costs of engineering inspection may be included in the cost of the improvement in addition to the six per cent.

We are not advised in the instant case whether the Village in the ordinances provided for six per cent or more of the amount of the assessment to be levied to defray the costs of making and collecting the assessment, but this is immaterial because we hold that the costs of engineering and inspection are a part of the costs of the improvement, and the vouchers issued to evidence the costs of engineering and inspection are on a parity with the vouchers issued to plaintiffs and cross plaintiff.

Since the decree in the instant case is not in conformity with the rule announced in this opinion, it is reversed and the cause remanded.

*Reversed and remanded.*

McSurely, P. J., and Matchett, J., concur.